**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-22636-CIV-UNGARO/SIMONTON**

ALIX DUVAL,

      **Plaintiff,**

v.

LAW OFFICE OF ANDREU, PALMA
& ANDREU, PL, f/k/a LAW OFFICE
OF ANDREU & PALMA, PL, et al.,

      **Defendants.**
_____/

<u>**ORDER GRANTING IN PART PLAINTIFF'S MOTION**</u>
<u>**FOR ORDER TO SHOW CAUSE AND SANCTIONS**</u>

      This matter is before the Court on Plaintiff's Motion For Order to Show Cause and

Appropriate Sanctions for Defendants' Willful/Bad Faith Failure to Comply With

Magistrate's Discovery Order (DE # 70).  This motion is referred to the undersigned

Magistrate Judge for disposition (DE # 71).  The motion is fully briefed (DE ## 73, 76).

For the reasons stated below, the Motion for Sanctions is granted in part.

      I.     <u>**BACKGROUND**</u>

      Plaintiff is proceeding under a three-count Complaint, alleging that Defendants

violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, (Count I), and

the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72 (Count II), and

wrongfully obtained a writ of garnishment (Count III).  Specifically, Plaintiff contends that

Defendants, acting as debt collectors, obtained an *ex parte* Final Default Judgment,

without notice to Plaintiff, and then obtained a writ of garnishment for Plaintiff's bank

account, even though Plaintiff and Defendants had entered into an agreement to repay

the debt on a monthly basis and Plaintiff had actually repaid the debt (DE # 1).

Defendants have answered the Complaint, and, *inter alia*, raised the Affirmative Defense "that any violation of law was unintentional and the result of a bona fide error, notwithstanding reasonable procedures in place to prevent such errors (DE ## 17, 24).

The presently pending motion follows, and is based upon a series of discovery disputes that culminated in the latest motion, which seeks the ultimate sanction of striking Defendants' Answers, or at least their Affirmative Defenses.  Therefore, the history of discovery is set forth below.

## II.   FRAMEWORK FOR ANALYSIS

Pursuant to the Federal Rules of Civil Procedure, a party that "fails to obey an order to provide or permit discovery" is subject to a further order imposing sanctions which may include "striking pleadings in whole or in part" or "rendering a default judgment against the disobedient party." Fed.R.Civ.P. 37(b). In order to impose the extreme sanction of a default judgment under Rule 37(b), the Court must find "(1) that the party exhibited a willful or bad faith failure to obey a discovery order; (2) that the moving party was prejudiced by that violation; and (3) that a lesser sanction would fail to punish the violation adequately and would not ensure future compliance with court orders." *Immuno Vital, Inc. v. Telemundo Group, Inc.*, 203 F.R.D. 561, 571 (S.D. Fla. 2001) (citing, *inter alia*, *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993)).

The discovery disputes at issue in the case at bar are examined with these principles in mind.

## III.   THE PREVIOUS ORDERS REGARDING THESE DISPUTES

On January 25, 2010, after receiving an order of reference on discovery matters, the undersigned Magistrate Judge entered an order on discovery practices (DE # 51).

Also on January 25, 2010, the undersigned Magistrate Judge entered an Order

2

that required counsel for all parties to confer regarding the issues raised in Plaintiff's discovery motions (DE ## 42, 43, 44) on or before January 29, 2010; and, if the consultation did not resolve all issues raised in Plaintiff's motions, also required Defendants to file responses to Plaintiff's motions, on or before February 1, 2010 (DE # 52).

On February 2, 2010, Plaintiff filed a notice concerning the effort to resolve the issues raised in Plaintiff's discovery motions.  Plaintiff stated that on January 29, 2010, the parties held a telephone conference which resolved issues relating to Requests for Production 1 through 3 and 13-15, and Interrogatories 1, 2, and 5.  Defendants also agreed to provide a jurat.  Defendants were to provide all supplemental responses by February 3, 2010.  Plaintiff also noted that Defendants had not filed responses to Plaintiff's discovery motions, as ordered by the Court (DE # 54).

On February 3, 2010, after Defendants had not filed responses to Plaintiff's discovery motions by the ordered date of February 1, 2010, the undersigned granted by default Plaintiff's discovery motions (DE # 55).

On February 3, 2010, after the undersigned had granted by default Plaintiff's discovery motions, Defendants filed a motion to reconsider the granting by default of Plaintiff's discovery motions, contending that their failure to file a response to Plaintiff's discovery motions in a timely manner was a result of excusable neglect.  Defendants requested leave to file a response to Plaintiff's motions (DE # 56).  Defendants also filed a response to the discovery motions (DE # 57)  On February 5, 2010, Defendants filed a notice with an email attached from Plaintiff's counsel stating that he did not object to a grant of the motion for reconsideration (DE # 58).

On March 1, 2010, the undersigned granted the motion for reconsideration,

3

vacated the portion of the February 3, 2010 Order which granted by default Plaintiff's discovery motion, and allowed Plaintiff until March 5, 2010 to file a reply (DE # 60).  On March 3, 2010, Plaintiff filed his reply (DE # 61).  A hearing on the discovery motions was set for March 17, 2010.

On March 9, 2010, Defendants filed a Motion for Protective Order, seeking to cancel their depositions, which were set for the following morning (DE # 62).  The undersigned denied the Motion on March 10, 2010, noting that Defendants had received the Notices (by their own account) on February 25, 2010, but had not attempted to contact Plaintiff's counsel until 6:19 p.m. on Sunday, March 7, 2010, and had not filed their motion until March 9, 2010; and, that the Motion provided no reason for their unavailability (DE # 64).

Thereafter, on March 11, 2010, Plaintiff filed a Motion to Compel and For Appropriate Sanctions Against Defendants For Failure to Attend Their Scheduled Depositions Despite the Court's Order Denying Their Emergency Motion for Protective Order (DE # 66).  Defendants were permitted to respond orally at a hearing held on March 17, 2010.  The Court granted the Motion for Sanctions, in part, awarding a portion of the requested attorney's fees, as well as the cost of the court reporter.

In addition, at the March 17th hearing, the Court orally granted the Motion to Compel, in part, and ordered that supplemental responses be provided, on an expeditious basis, to various Interrogatories and Requests for Production that were the subject of the Motion (DE # 87).

The present Motion for Sanctions followed.  Plaintiff contends that Defendants failed to comply with the Order granting the Motion to Compel; Defendants contend that they have fully answered the Interrogatories and produced all documents required by the

4

Court's order.  As relief, Plaintiff requests the Court to impose sanctions in the form of striking Defendants' Answers, or their Affirmative Defenses; or, in the alternative giving "an appropriate jury instruction wherein the jury can infer certain facts in light of Defendants' failure to produce court ordered discovery–particularly documents that relate to other default or ex parte final judgments obtained by the Defendants, and consumer complaints levied against them."  (DE # 70 at 12).

      **IV.**    **THE DISCOVERY DISPUTES AT ISSUE**

           **A.**    **The Claimed Failure to Provide Discovery Ordered by the Court**

At the outset, the undersigned notes that a sworn Declaration/Affidavit was required by the Court with respect to claims regarding the burdensomeness of searches, and to establish that thorough searches were performed.  Defendants included information only in unsworn responses to the requests for production numbered 4 through 12.[1]  Therefore, on or before June 4, 2010, a sworn Declaration/Affidavit must be produced with respect to those matters, and shall include an affirmation that the information is not accessible via an electronic search of the computer system, and shall also state the way in which records are kept and why it is not possible to obtain the information through an electronic search.  For example, in particular, it would seem that if the Better Business Bureau had received a complaint about the debt collection practices of Defendants, then Defendants would have typed a response that could be accessed by searching its computer records for the phrase "Better Business Bureau" or "BBB."  Similarly, it would seem that cases in which default judgments were obtained

---

[1]  The only Affidavits provided concerned the provision of documents from Plaintiff's account, and did not address the other requests, which were primarily related to the bona fide error defense.

could be electronically retrieved through a phrase search of the computer system.  The sworn Declaration/Affidavit shall address whether such searches were performed, and if not, why not.

1.  <u>Interrogatories 1 and 2</u>

In Interrogatories 1 and 2, Plaintiff seeks the telephone numbers for the person answering the interrogatories, as well as the name, address, telephone number, place of employment, and job title of any person with knowledge or information pertaining to any fact alleged in the pleadings, or any fact underlying the subject matter of the action; and, requests the specific nature and substance of the knowledge of those witnesses. Defendants agreed to provide this information in connection with the initial motion to compel, and the Court ordered that the information be provided on or before March 24, 2010.

Plaintiff now contends that Defendants did not provide the telephone numbers for the witnesses who were disclosed pursuant to these requests, and failed to provide any names or contact information for approximately 20 unknown individuals who were associated with Plaintiff's debt collection file.

A review of the Amended Answers provided by Defendants reflects that they identified defendant Juan Andreu, and five other persons who are described as "collectors" who may have information regarding conversations between Defendant and Plaintiff and collection activities performed on the underlying debt.  Two of these persons remain employed by Defendants (George Wright ("JEW") and Pedro Meurice ("PJM")), and three are no longer employed there (Joseph Beraldi ("CPA" or "JEB"), Ernesto Velez ("CRA" or "EAV"), and Sonia Cindy Arguelles ("CL3")).  Plaintiff states that he attempted to locate telephone numbers for these three witnesses, but was unable to

6

do so.  In addition, Plaintiff tried to locate them at the addresses provided, and learned that the addresses were apartments or condominiums, but no unit numbers had been provided.  Plaintiff contends that even if the court were to impose monetary sanctions and order the contact information to be provided, it is too late for Plaintiff to make use of that information due to the discovery deadline.  Plaintiff claims he needed this information to impeach the reliability of the account history log, which was generated by Defendants, and which he disputes as untrustworthy.  Therefore, he seeks to preclude the use of the account history log, or for the court to instruct the jury that they can make an adverse inference regarding the accuracy of the log based upon Defendants' failure to provide the names of the employees, their phone numbers, or even their correct addresses.

Plaintiff attached the account history log to his reply (DE # 76-1).  A review of the log confirms that it contains the initials of various persons who made entries into the log:  EDI, JGA, C03, CSS, DRE, REC, JLP, J.C., Y.S., M.M., EDI, OSR, ASP, CL3, Y.C., CMN, C06, JMA, CRA, NCA, JEW, J.B., JAM, REG, E.V., RCP, PJM, and RLB.  In response to Interrogatory # 2, Defendants provided the identity of persons associated with only 7 of these initials.

Defendants respond that Interrogatories 1 and 2 were never part of Plaintiff's Motions to Compel.  Defendants further respond that Defendants provided the relevant contact information for all of its employees that Defendants believe may be potential witnesses in this matter.  Defendants assert that they provided the last known contact information for any former employees who were associated with Plaintiff's account and/or file.  Defendants also state that Defendant Andreu provided Plaintiff with all responsive names at his deposition.

7

Neither side has provided the deposition of Defendant Andreu, or stated the role of the persons whose names were not provided prior to the deposition of Defendant Andreu.  Therefore, it is impossible for the Court to determine whether any of the persons who were not previously identified have information regarding the disputed issues in this case, or merely served in a ministerial capacity in entering certain information.  Defendants noted in their response that the overwhelming majority of the persons who were identified in the deposition of Juan Andreu "performed no tasks other than minor clerical functions," and Plaintiff did not controvert this in his reply.  In addition, there has been no claim that Plaintiff was unable to contact the two persons who remain employed by Defendants--George Wright ("JEW") and Pedro Meurice ("PJM").  Therefore, the Court will focus on the three persons as to whom incomplete addresses were provided--Joseph Beraldi ("CPA" or "JEB"), Ernesto Velez ("CRA" or "EAV"), and Sonia Cindy Arguelles ("CL3").

Although Plaintiff asserts that he sent letters to these three individuals, which were returned as undeliverable, and that when he visited the three addresses he learned that these were condominium/apartment buildings and that the addresses provided did not include unit numbers, it is unclear whether Plaintiff used the information provided to take the simple step of searching the Miami-Dade and Broward County property appraiser websites, or using a "people finder" type search on Westlaw or Lexis, to try to locate these individuals.  This is not to say that Defendants do not have the obligation to conduct a full and thorough search of their records and provide the most complete contact information in their possession; but it is a factor in determining the prejudice which resulted from the incomplete addresses, and thus the appropriate sanction.  In addition, Plaintiff's brief explanation that it needs to question these witnesses regarding

8

the account history log, without explaining what parts of the log that he seeks to challenge with these witnesses, does not provide a sufficient showing of prejudice to warrant the extreme sanctions sought at the present time.  However, due to the apparent insufficiency of the addresses provided, on or before June 4, 2010, Defendants are required to provide to Plaintiff's counsel any and all information from the personnel files, tax records. and other records kept by Defendants, which are relevant to the determination of the present addresses of these individuals, including complete addresses, social security numbers, driver license numbers, and any other information in their possession regarding how to contact these persons.  Plaintiff's counsel  may use this information for the limited purpose of locating the witnesses, and shall not disclose or disseminate the information for any other purpose.

Plaintiff may depose these three individuals on or before June 23, 2010.

### 2.  Interrogatory 4

Interrogatory 4 asks Defendants to "describe in detail any and all communications had with the Plaintiff or any member of his family, the dates thereof, the manner thereof, the reason/purpose thereof, the identity of all involved, and identify any documents relating to or generated with regards to such events."

In the Motion for Sanctions, Plaintiff acknowledges that Defendants provided an amended answer to this interrogatory which sets forth in detail all such communications; however, Plaintiff asserts that the answer is deficient because it does not identify the persons involved in the communications since it uses the term "Defendant" throughout the answer rather than the name of the person who made the communication.

Defendants respond that they have fully answered this interrogatory, including

9

providing the names of the collectors who had contact with Plaintiff.

Plaintiff replies that Defendants did not provide responsive information until the March 31, 2010 deposition of Defendant Andreu, by which time it was too late to use the names to conduct discovery, given the discovery deadline of April 16, 2010.

The undersigned concurs with Plaintiffs assessment that a complete answer required the information subsequently provided, one week later in the deposition. However, to the extent that further relief is warranted, that relief is provided above with respect to Interrogatory 2.  This discovery defalcation will be considered, however, with respect to a determination regarding whether further sanctions are warranted.

### 3.   Interrogatory 6 and Requests for Production 10 and 11

As to Interrogatory 6, and Requests for Production 10 and 11, Plaintiff seeks all relevant complaints levied against Defendants, including any complaints directed to the Better Business Bureau, the Florida Bar, or any other consumer protection entity or organization, and to produce all related documents.

Defendants state that they have provided Plaintiff with all information and documents in their possession which are responsive to the discovery requests, which included six civil complaints filed against Defendants in the past three years throughout the United States.  Defendants state that they do not maintain records of consumers who make complaints to them, and there is nothing to contradict this.  Plaintiff asserts that such information is kept in the account transaction logs that reflect any letters or verbal communications with all debtors.

 As stated by the Court at the discovery hearing on March 17, 2010, it is unduly burdensome to require a manual search of all accounts to retrieve information that cannot be electronically searched and retrieved.  However, Plaintiffs point out that

responses to the Better Business Bureau and consumer protection agencies would have been created on a computer and presumably saved in electronic form.  Therefore, if they have not done so, Defendants shall search their computer system in an effort to retrieve any responses made by them to the Better Business Bureau, or any other consumer protection agencies, and shall provide r responsive documents.  A sworn Declaration/Affidavit made under penalty of perjury which describes the search conducted, shall be provided to Plaintiff on or before June 4, 2010.

With respect to the Florida Bar complaints, Plaintiff states that Defendants did not provide this information until the March 31, 2010 depositions of Defendants Andreu and Palma, at which Defendant Palma stated that while he was aware of several bar complaints against him, he could not remember the nature of a single one of them. Plaintiff contends that Defendants have set out to deliberately disregard the Court's order and to withhold material and harmful documents and information.

On or before June 4, 2010, Defendants must provide Plaintiff's counsel with a copy of each of the bar complaints filed against Defendant Palma that in any way relate to his debt collection practice.  Plaintiff's counsel is only permitted to use the bar complaints or any information contained in them in connection with this litigation, and Plaintiff is prohibited from disseminating the bar complaints or any information contained in them to anyone not directly involved in this litigation.

Plaintiff may redepose Defendant Palma and/or the corporate representative, at Defendants' expense, concerning the above matters, on or before June 23, 2010.

### 4.  Recordings of Plaintiff

Plaintiff also asks that Defendants amend their interrogatory answers, as ordered by the Court, to indicate if Defendant possessed any other recordings of Plaintiff.

Defendants state that they have reviewed their entire case file and have determined that they possess no other recordings pertaining to Plaintiff except for the one recording already produced.  They also state that Defendant Andreu confirmed this fact at deposition.

Plaintiff states that there should be several recordings of his conversations with Defendants' employees.  Plaintiff contends that at Defendant Andreu's March 31, 2010 deposition, Andreu testified that he was personally aware of at least two recordings, has personally reviewed both of them, and has provided both of them to defense counsel. Nevertheless, Defendants have not produced the second conversation.

The parties disagree about the testimony of Mr.  Andrea regarding this second recording; and the transcript was not provided; therefore the Court cannot independently review the testimony.  To lay this matter to rest, on or before June 4, 2010, Defendants must ensure that Plaintiff has received a copy of each of the recordings identified by Defendant Andreu at his March 31, 2010 deposition.  In addition, if a second recording is not found, Defendant Andreu shall provide a sworn Declaration/Affidavit which explains the inconsistency.

### 5.  Requests for Production 1 and 2

As to Requests to Produce 1 and 2, Plaintiff seeks:  documents regarding the underlying debt and its assignment; all communications sent directly from Defendants to Plaintiff; all correspondence received from or sent to the state court judge; and copies of checks used to pay fees to the state court, which were all ordered to be produced by this Court.

Defendants state that they have provided Plaintiff with all information and documents in their possession which are responsive to these requests, as they have

stated in their affidavits.

Plaintiff claims that Defendants have never provided even a copy of the default final judgment package which they sent to the state court judge.

The undersigned finds no basis to question Defendants' sworn representations that they have provided Plaintiff with all information and documents in their possession which are responsive to requests for production 1 and 2.  Of course, Defendants may not introduce into evidence or use in any way at trial any documents responsive to these requests which they have not produced to Plaintiff.

### 6.   Requests for Production 4, 5 and 8

As to Requests to Produce 4, 5 and 8, Plaintiff seeks: any complaints which Defendants filed against any consumer for the past three years wherein a default or ex parte judgment/decree was obtained, which were ordered to be produced by this Court. Plaintiff states that Defendants' counsel submitted an unsworn response instead of the Court-ordered detailed affidavit setting forth Defendants' justification for not being able to comply.  Plaintiff further states that in the unsworn statement, Defendants' counsel stated that Defendants file between one thousand and two thousand Complaints against consumers per month, and that to obtain the requested information, Defendants would have to manually review over 54,000 files.  Plaintiff asserts that Defendants previously stated that they had electronic logs of all transactions and that documents are stored electronically.

The undersigned finds no basis to question Defendants' sworn representations that it would be unduly burdensome to search their account files for documents in their possession which are responsive to requests for production 4, 5 and 8; and, the sworn Declaration/Affidavit required by this Order should verify that this is the case.

### 7. Request for Production 14

As to Request for Production 14, Plaintiff contends that Defendants have failed to deliver, either electronically or in hard copy, the ordered documents to Plaintiff, specifically, the employee manual, the FDCPA training manual, the HIPPA training manual and the telephone technique manual.

Defendants respond that they attempted to provide these documents to Plaintiff by email, and when this did not work, they sent hard copies via overnight delivery, which Plaintiff received the next morning.

Plaintiff replies that Defendants provided him with these documents on March 26, 2010, when they were due on March 24, 2010, and Plaintiff also alleges that the documents were incomplete.

It appears that Defendants have produced these documents to Plaintiff, and that Plaintiff received hard copies of these documents soon after the deadline.

### 8. Request for Production 16

As to Request for Production 16, Plaintiff contends that Defendants have failed to provide the court-ordered net worth discovery to Plaintiff.

Defendants contend that they have complied by supplying Plaintiff with their profit and loss statement.

Plaintiff replies that Defendants have never provided him with a profit and loss statement, and that a profit and loss statement is not responsive to a request for net worth discovery as it shows only annual income, not net worth.  Defendants respond that they have produced their profit and loss statement, and that this is responsive.

On or before June 4, 2010, Defendants shall ensure that Plaintiff has, indeed, received the profit and loss statement which they claim to have provided.  However,

14

although relevant, this alone is not sufficient to provide the net worth discovery requested by Plaintiff.  Therefore, Defendants must also produce other documents which show their net worth, such as a yearly balance sheet.  Plaintiff may only use the net worth documents in connection with this litigation, and Plaintiff is from disseminating the net worth documents to anyone not directly involved in this litigation.

### B.    The Appropriate Sanctions

Plaintiff asks this Court, pursuant to Fed.R.Civ.P. 26 and 37, and the Court's inherent powers, to sanction Defendants for their continued failures to timely respond to discovery requests and their continued failures to comply fully with this Court's orders. Plaintiff describes Defendants' actions as wilfully evasive and dilatory. Plaintiff asks that Defendants be sanctioned by entering a default judgment as to liability against them, striking their Affirmative Defenses, or giving an adverse inference instruction to the jury.

Defendants request that no sanctions be awarded.

In his reply, Plaintiff contends that monetary sanctions are inadequate since the discovery cut-off has already passed.  Thus, Plaintiff asks this court to consider striking all or part of Defendants' pleadings; limiting the introduction of the account history notes, as well as instructing the jury regarding the inferences the jury may draw in light of Defendants' discovery misconduct.

The undersigned finds that Defendants have repeatedly delayed in providing responsive discovery.  However, these defalcations do not rise to the level required to justify the draconian sanctions of striking their Answer or Affirmative Defenses, or an adverse jury instruction.  However, monetary sanctions are appropriate, and therefore Plaintiff is awarded the costs and attorneys fees incurred in bringing this motion. Plaintiffs' counsel may file a Motion to Determine Amount of Award within 30 days from

the date of this Order.  However, because the undersigned remains concerned regarding

the sufficiency of the efforts put forth by Defendants with respect to their discovery

obligations, and has ordered supplemental discovery and a sworn Declaration/Affidavit,

this Order is without prejudice to seek further sanctions.  If Defendants do not fully

comply with this Order, the undersigned may award sanctions to Plaintiff, up to and

including a default judgment as to liability against Defendants.

Therefore, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion For Order to Show Cause

and Appropriate Sanctions for Defendants' Willful/Bad Faith Failure to Comply With

Magistrate's Discovery Order (DE # 70), is **GRANTED in part**, as stated in the body of

the Order.

**DONE AND ORDERED** in chambers in Miami, Florida, on May 31, 2010.

*Andrea M. Simonton*
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished via CM/ECF to:
The Honorable Ursula Ungaro, United States District Judge
All counsel of record

**16**